Good morning, Your Honors. May it please the Court, my name is Heather Kenny, and I'm an admitted student from Chapman University School of Law. I've been appointed as pro bono counsel for the petitioner, Mr. Sigala, and my supervising attorneys, Professors Afrasiabi and Penfill, are both admitted to practice in the Ninth Circuit. May I please reserve two minutes for rebuttal? Yes, and we'll try to help you, but keep your eye on the time. Thank you. This Court should reverse, because Mr. Sigala's 25-years-to-life sentence violates the Supreme Court's gross proportionality principle, and therefore constitutes cruel and unusual punishment under the Eighth Amendment. In Ramirez v. Castro, this Court articulated a two-part framework for analyzing the constitutionality of a three-strike sentence. First, this Court determined whether or not the sentence raised an inference of gross disproportionality by looking at certain objective factors, such as the core conduct of the offense and the level of harm the offense caused or threatened to society. The defendant's real-time term served, as determined in part by the opportunity or lack thereof for early parole or a reduction in sentence based on good behavior. The length and severity of the defendant's past criminal record, particularly when compared against that of other three-strikes offenders, and taking into account the facts behind the prior strikes, not just necessarily the legal definitions of those strikes. Second, if the sentence raises an inference of gross disproportionality, this Court may conduct a comparative analysis, looking at sentences imposed on other defendants in the same jurisdiction and imposed for the same crime in other jurisdictions. Mr. Segala's nonviolent, noninjury DUI raises an inference of gross disproportionality, which is only heightened by the performance of an intra- and interjurisdictional analysis. Kennedy. Counsel, nonviolent. Didn't Mr. Segala, in his drunk driving escapade, escape from the police and hit two vehicles? Yes, he did, Your Honor. All right. I just want to make sure I have the right case. Yes, he did, Your Honor. We certainly consider drunk driving to be a serious crime. However, in this case, nobody was hurt. And more importantly, as this Court talked about in Reyes v. Brown, drunk driving is not a crime targeted at another individual. This is something where he damaged property and has therefore since made restitution for that damage. However, like I said, it's not a crime targeted at another individual, which is something this Court found significant. Now, this is an AEDPA case, I assume. That is to say, it comes under the AEDPA. Yes, that's correct. And the standard, then, is not merely that the sentence must be unconstitutional under Supreme Court case law, but it must be, how do I say this, really unconstitutional under Supreme Court case law.  An unreasonable application of clearly established Supreme Court precedent. And how do you get around the Supreme Court case law in, for example, the Andrade case? Your Honor, I don't think... I mean, as I say it this way, why is it clearly unconstitutional under that case law? Andrade and Ewing, this Court in Ramirez followed Andrade and Ewing. Andrade and Ewing applied objective factors in analyzing the sentences, such as length of the sentence, severity of the crime, past incarcerations, that type of thing. And this Court in Ramirez applied that analysis and just came to a different conclusion than the Court did in Andrade and Ewing. And Mr. Segala's case is much more similar to Mr. Ramirez's case, for example, or Mr. Reyes's case, than it would be for Mr. Rios's case. Although in all three of those cases, this Court applied Andrade and Ewing and just came to a different result with the framework. Help me with the Ramirez case. What's that case? Ramirez v. Castro, Mr. Ramirez had two prior robbery strikes. And this Court said that they were more akin to confrontation petty theft than robbery, because there was no real violence involved. And what was his third? His third strike was a petty theft. He stole a less than $200 VCR. So it was a wobbler. Yes, it was a wobbler. So... Would you recite for us the priors of Mr. Segala, please? His first was burglary. His second was rape. First-degree burglary. Yes, Your Honor. Of residents, right? Yes, Your Honor. And the second was rape of an unconscious person. Of an unconscious person. Yes, Your Honor. Do you think that that's like two prior robberies which were more like petty theft where nobody was hurt? No, Your Honor. However, one of the things that Reyes taught us was that it is important to know the factual specifics behind the crimes. We don't really have factual specifics necessarily behind the burglary or the rape. All we know is that he was sentenced to two consecutive terms and served a total of two years for both of those crimes. If we don't have those facts, whose fault is that? Well, this court in Reyes sent that back, remanded the case in order for factual development on the record. And one of the critical things about this case is Mr. Segal, for example, like Mr. Reyes, committed both of his prior strikes when he was very young, 20, 21 years old. Since then, he has a history of non-strike offenses, mainly drug and alcohol-related offenses, which are more a function of his drug and alcohol problem than anything else. And how old is he now? He's 50. He's in his mid-40s. He'll be 56 before he's eligible for parole. So it's been he committed both of those crimes in 1984. And since then, everything has been, the majority at least, has been drug and alcohol-related crimes. And in this case, as I stated, it is nonviolent. There was no injury. And just looking at the third strike, standing alone. You think it's nonviolent because no one was injured? Yes, Your Honor. In other words, he's driving like crazy down the highway, and he has, runs into two fixed objects, and nobody is hurt. It seems to me there's some violence in there. It's just that no one is hurt. Does violence only occur when somebody's hurt? No, Your Honor, but the unique thing in this case is that it was not a crime targeted at another individual. He got lucky. Yes, Your Honor. However, the situation remains still that he's looking at 25 years to life for a DUI, something that normally would receive in California, at least, between one and three years in jail or state prison. So he's looking at serving 25 years rather than one to three years. With respect to his prior criminal history, the California Court of Appeals said that, it noted that in addition to the three driving under the influence convictions in 1988 and 1992, and the two prior serious convictions in 1984 for residential burglary and rape of an unconscious person, the defendant has also suffered convictions in 1988 for possession of a controlled substance and being under the influence of a controlled substance, in 1989 for possession of a controlled substance. And I could go on. You think that's more like Ramirez? I do, Your Honor, just in that his offenses, actually, I would compare it more to the Reyes v. Brown case. Because in that case, you did have a defendant that had very similar criminal history. He had two violent and or serious strikes, and then a history of non-strike offenses, which this court noted became indisputably less serious over time, which they did. So I would still compare it to Ramirez just in the fact that, like Mr. Ramirez, Mr. Segala will serve a real-time term of 25 years. He will not be eligible for parole before 25 years. And he's serving that for a crime which normally would be punishable by much less time. Okay. I think we have your argument in hand. You're working into your two minutes. Why don't we hear from the other side, and then we'll hear from you again. Thank you, Your Honor. Good morning, Your Honors. Deputy Attorney General David Cook for Respondent. Just a few points. My opposing counsel has identified this targeting kind of test as far as the current offense in the Eighth Amendment analysis, whether there was some kind of violence targeted at another person. However, in the Ramirez case, the language used by this court was more along the lines of whether the instant offense threatened a grave harm to society. And that clearly is the case with Mr. Segala's current offense with his drunk driving and all of the other consequences of his drunk driving. I'd like to point out to the court also, in the briefs, Petitioner has asked for a remand to, in part, to determine whether the two prior strike offenses, the rape and the burglary, were the result of a plea bargain or not. I went back before the argument and just double-checked the record. I don't know whether the entire clerk's transcript was lodged with this court or not. I did not put it in my excerpts. I don't believe it's in Petitioner's excerpts. However, the abstract of judgment was in the clerk's transcript, and it shows that the prior burglary and rape were the result of a plea bargain, where Petitioner received two years for both crimes, I should say two years for the burglary and a consecutive two years for the rape. So as to Petitioner's request for a remand to clarify the record, the record is, it would show the result or how those two prior strikes came to be. As for Petitioner's criminal history, I... I'll review for me. I should know this, but I do not. Were those two prior strikes, did they arise out of the same episode, or were they merely prosecuted together? The record does not show that. There was one trial which resulted in the one plea to the two crimes. I don't have any factual... There was a trial or there wasn't a trial? Well, I should say the trial proceedings. I don't know whether there was an actual jury impaneled or the timing of the plea. However, the two charges were the result or the two charges ended up as being convictions by plea. I see. But you don't know, and I guess I can go back and look and see if I can figure it out, but as you stand here, you don't know whether they both arose out of the same episode? No, I do not, Your Honor. If they did, and this is now... I just don't know the answer to these questions. If they did arise out of the same episode, could that be two strikes? Yes, Your Honor. So you can get two strikes out of the same episode if you commit two crimes during the same episode? That is correct. So if somebody who breaks into a house and commits a rape and then takes something, that's two strikes right there? Yes. Unless Your Honor has any further questions, I'd like to move on to the next point, if I may. Just with regard to Petitioner's criminal history, I would also like to point out, and the record does show this, that Mr. Segala committed the instant offense four days after he was released from state custody on parole. And in the ten years between his rape burglary conviction, which was his first, his strikes, to the time he committed the instant DUI offense, in that ten-year period, there were a host of convictions and jail time. And he certainly fits within the idea of the career criminal, the repeat offender, that the three strikes law was enacted to punish. Lastly, Your Honors, with regard to the Ramirez case, Ramirez is distinguishable. Although in the Ramirez case, the prior strikes were robberies, the factual circumstances of those robberies showed the amount of force used in the prior strikes was kind of, was minimal. Whereas in the present case, although we don't have the specific facts of the burglary itself, the burglary strike, we can tell just by the statutory definition, elements of rape, that that prior strike involved very serious conduct. I don't have any further comments unless this Court has further questions, I submit. Thank you, Mr. Clark. Thank you, Your Honors. Your Honors, I think that the State's uncertainty as to whether or not there was a trial or not a trial, or whether or not these offenses were pled, sort of points to the conclusion that we don't know exactly what happened with the first and second strike. Is that information in the clerk's record, in the documents that were not included in the excerpt of record? On page 225 of our excerpts of record is the defendant's rap sheet, and both say that on 10-18-1984 was when he was charged with the crime. But we don't know whether they wrote it. I mean, we assume that they came out of the same offense. But we don't know whether they did or not. And that's one of these things that Reyes has instructed us, then we have to remand this case back. Unless it's already in the record. Right. But counsel, if a person goes on a rampage and steals four purses from four ladies waiting for a movie, and those are four counts, all arise out of the same incident, those are four strikes in California. Yes, Your Honor. However, as I stated, in this case we don't know exactly what happened with these, and we don't know the factual circumstances. Do we need to remand if that information is already in the district court record? No, Your Honor. However, it would be extremely helpful via Reyes to know the amount of force used in those crimes, as well as the level of seriousness. But does the amount of actual physical force used in a rape really matter? Isn't it lack of consent that's the thrust of rape? Yes, Your Honor. However, the Reyes court would seem to differ with that respectfully by stating that regardless of what the legal definition of the crime is, we have to know the factual circumstances surrounding it. I think that may certainly be true in some elements of property crimes. I'm not so sure it's true of rape. Yes, Your Honor. We simply ask that this court vacate the sentence and remand the case for resentencing consistent with Ramirez, and at the minimum that this court follow Reyes and remand the case for factual development as to the prior strikes. Thank you. Thank you very much. I thank both sides for a helpful argument, particularly a nice argument from a law student. So the case of Segala v. Campbell is now submitted for decision. The next case in the argued calendar is Hernandez v.
judges: T.G. Nelson, W. Fletcher, Bea